UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REIS, INC. and REIS SERVICES, LLC,

                Plaintiffs,

- against -

JOHN DOE subscriber(s) assigned IP addresses 24.214.153.165, 75.76.201.132, 75.76.53.79, 75.76.13.227 and 98.230.174.107,

                Defendants.

15 CV 1444

JUDGE FAILLA

___ Civ. ___ ( )

**COMPLAINT**

      Plaintiffs Reis, Inc. and Reis Services, LLC (together, "Reis") allege upon knowledge as to themselves and their own actions and on information and belief as to all other matters as follows.

### Nature of the Action

      1.    This is an action for data piracy brought under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* The Defendant (or Defendants) (including, unless otherwise stated, its agents, officers, employees, and other personnel under its control), hiding anonymously behind numbered ranges of internet addresses, has been using stolen login credentials to access Reis's proprietary subscription database without authorization and to download — without paying — thousands of commercial analytic reports. These are reports that Reis's legitimate users pay tens (and sometimes hundreds) of thousands of dollars in annual subscription fees to obtain.

      2.    Reis's proprietary database (the "Reis Database") has been developed and maintained by Reis through its extraordinary investments, efforts, and creativity over the last 34 years. Reis, Inc. is a public company that is a leader in providing up-to-date

1

commercial real estate market information and analysis. The Reis Database contains detailed information on commercial properties in 275 of the largest metropolitan markets and over 7,000 discrete neighborhoods throughout the United States.

3. A recent investigation conducted by Reis's Compliance Group has revealed that Defendant is one of many unidentified individuals or entities that has been downloading, without authorization, over 34,000 copies of reports from the Reis Database — services with a retail value of $16 million or more.

4. Through an investigation of unusual data access and download patterns by one or more users located at Internet Protocol ("IP") addresses 24.214.153.165, 75.76.201.132, 75.76.53.79, 75.76.13.227, and 98.230.174.107 (the "Doe's IP addresses") assigned by Internet Service Providers ("ISP") Comcast Cable Communications, LLC ("Comcast"), and Knology, Inc. (which, upon information and belief, was acquired by WideOpenWest Finance, LLC ("WOW") in April 2012) and located in Atlanta, Georgia and Huntsville Alabama, Reis has discovered that from at least July 2011 through September 2014, the unidentified Doe defendant has downloaded 2,830 proprietary reports with a retail value of $912,718 without providing any compensation whatsoever to Reis.

5. Reis has discovered, as part of its investigation, that the access of the Reis Database through the Doe's IP addresses, and Defendant's resulting downloads of Reis reports, were made by an individual or individuals wrongfully using a set of misappropriated login credentials that was issued to a well-known national financial institution that is a duly licensed Reis account holder ("Subscriber A"), and assigned to a Subscriber A consultant ("Consultant 1"). However, Consultant 1 merely accessed the

Reis Database on behalf of Subscriber A in connection with one project, such that the repeated, voluminous, and sustained use of Consultant 1's credentials from different IP addresses not associated with Subscriber A and, in most cases, located well over a hundred miles away, and the use of the Reis Database to access information about projects other than the one Consultant 1 worked on for Subscriber A, confirms that Defendant has used unauthorized login credentials.

6. By using unauthorized login credentials, Defendant has been able to access, download, and use data and information from the Reis Database without paying either (i) the a la carte retail prices for the reports that are charged to non-subscribers who wish to buy reports or (ii) a subscription fee required to take an annual license from Reis. Defendant has thus stolen nearly one million dollars worth of data from Reis, and this action seeks to hold it accountable for that misconduct.

7. Despite its diligent investigation, Reis is unable to ascertain the true identity of the individual(s) and/or entities accessing the Reis Database through the Doe's IP addresses. With the Court's permission, Reis will serve subpoenas on non-party ISPs Comcast and WOW that are narrowly tailored to seek information sufficient to reveal Defendant's identity.

**Parties**

8. Plaintiff Reis, Inc. is a Maryland corporation with its principal place of business in New York, New York. Reis provides commercial real estate market information and analytical tools to real estate professionals through its subsidiary, plaintiff Reis Services, LLC.

9. Plaintiff Reis Services, LLC is a Maryland limited liability company with its principal place of business in New York, New York.

10. Defendant is an individual or individuals and/or an entity or entities whose identity is presently unknown. Despite diligent investigation, Reis is currently unaware of Defendant's identity and needs to conduct discovery to ascertain this information. Once the identity of Defendant has been discovered, Reis will amend its Complaint to substitute Defendant's true name or names.

## Jurisdiction and Venue

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Although the true identity of Defendant is unknown to Reis at this time, a substantial part of the alleged events giving rise to the claim occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

## Factual Allegations

**Reis's Business and the Reis Database**

13. Reis (including its predecessors) was founded in 1980 and is recognized by the real estate industry and the business and trade press as one of the premier sources of objective, timely, and granular market information. This reputation was built by hard work and investment. Significantly, Reis's work is particularly valued because of its objectivity: Reis is independent of property owners and developers, and it does not compete as a broker in the listings space.

14. The Reis Database contains information on apartment, office, retail, warehouse/distribution, flex/research and development, self storage and seniors housing properties, and is used by real estate investors, lenders, and other professionals to make informed buying, selling, and financing decisions. In addition, Reis data is used by debt and equity investors to assess, quantify, and manage the risks of default and loss associated with individual mortgages, properties, portfolios, and real estate backed securities. Reis's products are designed to meet the demand for timely and accurate information to support the decision-making of its customers.

15. To maintain its position as a market leader, Reis continually invests in the databases, technologies, intellectual capital, and personnel (including over 200 employees) critical to supporting the ever-increasing information needs of commercial real estate professionals. Without access to the proprietary information developed and maintained by Reis, it would be incredibly burdensome, expensive, and time-consuming for a licensee (or other interested professional) to obtain equivalent in-depth information. Most professional real estate investors do not want to devote the resources to creating an in-house infrastructure capable of performing this work, which is why they subscribe to Reis's services.

16. Reis offers a variety of product delivery services that cater to the needs of different types of users. They include *Reis SE*, its flagship delivery platform aimed at larger and mid-sized enterprises; *ReisReports*, aimed at other professional consumers and smaller enterprises; and *Mobiuss Portfolio CRE*, or *Mobiuss*, aimed primarily at risk managers and credit administrators at banks and non-bank lending institutions. It is through these products that Reis provides online access to the Reis Database.

17. In addition, Reis continues to develop and introduce new products, expand and add new markets and data, and find new ways to deliver existing information to meet client demand. The depth and breadth of Reis's data and expertise are critical in allowing Reis to grow its business. To maintain its position, Reis continuously expends substantial additional investments and efforts to maintain and improve its offerings and ensure their currency.

**Subscriptions to the Reis Database**

18. Reis offers users a choice between a la carte (pay-as-you-go) access to the Reis Database and subscription-based access. Both involve fee-based access pursuant to a license agreement with Reis. Data from the Reis Database is made available in six ways, with price points that are reflective of the level of content being purchased:

- annual and multi-year subscriptions to *Reis SE* ranging in price from $1,000 to over $1,000,000, depending upon the subscriber's line of business, the number of subscriber employees licensed to use the service, the anticipated frequency of access and the combination of markets, property types, and reports subscribed to, for which the subscriber is typically allowed to download an unlimited number of reports over the subscription period in return for the up-front commitment to a fixed annual fee;

- annual and multi-year subscriptions to *Mobiuss* typically ranging in price from the low tens of thousands of dollars into the hundreds of thousands of dollars;

- capped *Reis SE* subscriptions ranging in price from $1,000 to $25,000, allowing clients to download content up to a ceiling defined by contractually agreed maximum retail value of reports over a particular period of up to twelve months;

- subscriptions to *ReisReports*, which are charged to a credit card, having a retail price ranging up to $150 per month (monthly or annual pricing options are available);

- custom data deliverables ranging in price from $1,000 for a specific data element to hundreds of thousands of dollars for custom portfolio valuation and credit analysis; and

- individual reports, which can be purchased with a credit card, having retail prices up to $999 per report and are available to anyone who visits Reis's retail web site or contacts Reis via telephone, fax or email. However, certain reports are only available with an annual subscription or capped subscription account.

19. Reis provides its information services to many of the nation's leading lending institutions, equity investors, brokers, and appraisers, which pay fees of up to several hundred thousand dollars a year in order to use the Reis Database.

20. As of June 30, 2014, Reis had 1,024 enterprise subscribers under signed contracts for its core *Reis SE* product. A subscribing entity may have one or many users entitled to access *Reis SE*. The number of users is a negotiated term of the contract, with higher prices generally charged to those subscribers who want more of their employees to have access. In addition to these enterprise subscribers, there are other users who pay for individual reports by credit card, subscribers to the *ReisReports* product, and additional users of information available on third party platforms through Reis's data redistribution relationships.

21. The vast majority of Reis's subscribers have utilized its core product for many years.

### Access to the Reis Database

22. The Reis Database is firewall protected. Access to the Reis Database is by secure password and can be customized to accommodate the coverage, property type, and analytical needs of subscribers, providing access only to those portions of the database that the subscriber has paid to see. To protect its proprietary rights, Reis also relies on, among other things, restrictive license agreements with subscribers.

23. When a company enters into a license agreement with Reis, it may obtain licenses for an agreed number of employees or other users associated with the company. Each individual user is then issued his or her own login credentials consisting of a unique username and password to access the Reis Database.

24. Users are not allowed to share passwords with other colleagues who work for a subscriber, much less with third parties. Nor may they take them to new employers if they cease working for the subscriber. Reis's Terms of Service, found on its website at https://www.reis.com/terms-of-service, and attached in substantially similar form to its subscriber agreements, including the Agreement, explicitly prohibit its licensees to "resell or transfer ... use of or access to" the Reis Database and elsewhere states that "[t]ransfer or assignment of your password and user name to another individual is strictly prohibited."

25. All users of the Reis Database, whether subscribers or first time consumers, agree to be bound by the "terms, conditions, and notices contained" in the Terms of Service, and use of the Reis Database indicates acceptance of the Terms of Service. The terms require, among other things, payment of fees for use of the Reis

8

Case 1:15-cv-01444-KPF   Document 1   Filed 02/26/15   Page 9 of 16

Database and obligate users to refrain from acting "in such as manner" as to deprive Reis of a "loss of a potential sale or subscription."

26. Reis also maintains an Anti-Piracy Policy on its website at https://www/reis.com/anti-piracy-policy, which defines "piracy" as "using our service without a license to do so, enabling or trying to enable a third party who is not authorized to use our service to use our service, or exceeding the scope of the uses permitted you under a license agreement between you and Reis."

27. Links to Reis's Terms of Service and Anti-Piracy Policy are clearly labeled on the sign in page of the Reis Database under the heading "LEGAL," which is prominently displayed merely one inch below the sign in fields. These links put users on notice that their access and use of the Reis Database are subject to the Terms of Service. A screen shot of the login page is provided here:



9

28. When authorized Reis Database users leave or are otherwise dissociated from Reis's subscribers, the Terms and Conditions incorporated into Reis's subscription agreements require the subscribers to notify Reis. This allows Reis to disable the departed employee's login credentials and at the subscriber's request, issue new ones to another employee instead.

**Patterns of Unauthorized Activity**

29. Reis's Compliance Group has recently uncovered patterns of activity where login credentials assigned to individuals at a company are being used repeatedly and for long periods of time from IP addresses that do not track back to the subscribing company associated with the credentials.

30. Specifically, Subscriber A, a well known financial institution, is a long term customer of Reis with a license to provide access to many of its employees and consultants, including Consultant 1. Consultant 1 only used his login credentials in connection with one project on behalf of Subscriber A. From July 2011 to September 2014, however, the login credentials assigned to Consultant 1 were used continuously and repeatedly to access the Reis Database from the Doe's IP addresses. The sudden proliferation of sustained access of the Reis Database from multiple sets of IP addresses, which were not associated with Subscriber A is consistent with someone either sharing his or her login credentials with, or having them stolen by, another person who then accessed the system without a license and without paying for the reports obtained.

31. Reis's investigation concluded that Consultant 1's login credentials have been used on at least 29 different IP addresses in the past three years. Consultant 1's login credentials were used to access the Reis Database from at least two separate

locations — Huntsville, Alabama and Atlanta, Georgia. The usage patterns, download activity, high volume of consumption, and location of downloads indicates piracy in support of multiple and separate businesses distinct from Subscriber A.

32. Although the identity and location of an IP user often can be ascertained through a "reverse lookup" of an IP address using various brand protection and cybercrime investigation tools, here, the Doe's IP addresses track back only to ISPs Comcast and WOW. Without further information obtainable in discovery as to the identity of the person(s) or entit(ies) to whom the Doe's IP addresses are assigned, Reis is unable to ascertain Defendant's identity.

33. However, the Doe's IP addresses do not belong to Subscriber A. Indeed, other than the credentials associated with Consultant 1, no other login credentials licensed to Subscriber A — or to any other subscriber — have ever accessed the Reis Database from the Doe's IP addresses. This single-login use from these IP addresses rules out institutional support of Subscriber A, which has many users who also would have appeared on the Doe's IP addresses. Moreover, Subscriber A does not maintain an office in the Huntsville, Alabama region.

34. Defendant has accessed, downloaded, and used data and information from the Reis Database without authorization. Based on an analysis of automatically-maintained records of login attempts and data downloads, Reis has determined that well over two thousand unauthorized, but successful, incursions into the Reis Database have occurred over a period of more than three years from computers bearing the Doe's IP addresses, resulting in the downloading of 2,830 reports with a retail value of $912,718.

35. Upon information and belief, Defendant stole or otherwise misappropriated or misused login credentials assigned to Consultant 1, a Subscriber A consultant, to access the Reis Database. That access has been tracked back to the Doe's IP addresses.

36. Upon information and belief, Defendant's unauthorized intrusions into the Reis Database were knowing and willful because Defendant knew that it is not Subscriber A or Consultant 1; knew that it had not paid for access to the Reis Database; knew that it did not have a license to use the Reis Database; and was on notice from the Terms of Service posted on the database that login credentials are non-transferable.

37. Upon information and belief, Defendant has accessed, downloaded, and used Reis's proprietary data and information without compensating Reis, and as a result, has damaged Reis by preventing Reis from collecting its customary charges for its proprietary data and information services, fully exploiting its licensing opportunities, and causing Reis to devote time, money, and valuable resources to maintain the security of its database for licensees and paying customers.

38. Reis has suffered damages as a result of Defendant's unauthorized access, downloading, and use of data and information from the Reis Database.

## Count I

**(Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030)**

39. Reis repeats and realleges the allegations of Paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. The Reis Database consists of servers and computers that are used in interstate commerce, and comprise a "protected computer" as that term is used in 18 U.S.C. § 1030(e)(2)(B).

41. Reis has maintained and secured the Reis Database by reasonable means at all relevant times.

42. Defendant intentionally accessed Reis's protected computer without authorization or in excess of authorized access and thereby obtained proprietary data and information services from the Reis Database. *See* 18 U.S.C. § 1030(a)(2)(C).

43. Defendant knowingly and with intent to defraud, accessed Reis's protected computer without authorization or in excess of authorized access and by means of that conduct furthered the intended fraud and obtained proprietary data and information services from the Reis Database with a retail value of $912,718. *See* 18 U.S.C. § 1030(a)(4).

44. Defendant intentionally accessed Reis's protected computers without authorization, and as a result, caused loss to Reis.

45. As a result of Defendant's conduct, Reis has suffered loss in attempting to protect its rights against unauthorized access, downloading, and use of data and information stored in the Reis Database and in expending time, money, and resources (aggregating at least $5,000 in value) to conduct a damages assessment, and has suffered additional monetary damages of at least $912,718 to date in lost revenue. 18 U.S.C. § 1030(c)(4)(A)(i)(I).

46. As a result of Defendant's conduct, Reis has also suffered damage to its business and goodwill.

47. Reis is therefore entitled to compensatory damages pursuant to 18 U.S.C. § 1030(g), *et seq.*

## Count II

### (Unjust Enrichment)

48. Reis repeats and realleges the allegations of Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. Defendant has accessed, downloaded, and used $912,718 worth of data and information from the Reis Database, but have provided no value in return to Reis.

50. Thus, Defendant has been unjustly enriched at the expense of Reis in an amount to be determined at trial, but at least $912,718.

51. It is against equity and good conscience to permit Defendant to retain the valuable information Reis seeks to recover herein.

52. Defendant's actions were knowing, intentional, and willful.

## Count III

### (Quantum Meruit)

53. Reis repeats and realleges the allegations of Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. Defendant has received and continues to receive a substantial economic benefit and competitive edge by virtue of its accessing, downloading, and using data and information from the Reis Database.

55. Defendant only obtained these benefits because it unlawfully accessed, downloaded, and used data and information from the Reis Database for its own economic and competitive advantage.

56. It is inequitable and unjust for Defendant to have obtained the benefit of using the Reis Database for its own economic and competitive advantage without justly compensating Reis.

57. Reis has suffered and will continue to suffer injury and damage in an amount to be proven at trial, but at least $912,718 as a direct and proximate result of Defendant's actions.

## Count IV

### (Breach of Contract)

58. Reis repeats and realleges the allegations of Paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Use of the Reis Database is governed by and subject to the Terms of Service located on the sign in page of the Reis Database.

60. At all relevant times, Reis prominently displayed a link to the Terms of Service on the sign in page of the Reis Database.

61. The Terms of Service is a valid, enforceable contract through which Reis provides authorized users with a limited license to use the Reis Database. By entering into this contract, users agreed to pay fees associated with use of the Reis Database — either on a per item basis or pursuant to a prearranged subscription agreement.

62. By entering into this contract, Defendant purposefully availed itself of the privilege of conducting business in New York.

63. Defendant materially breached the Terms of Service by repeatedly accessing and downloading documents from the Reis Database without compensating Reis for this privilege and with knowledge of the Terms of Service.

64. As a direct and proximate result of Defendant's material breach of the Terms of Service, Reis has been harmed and is entitled to monetary damages in an amount to be determined at trial, but at least $912,718, exclusive of attorney's fees, costs, and interest.

### Relief Requested

WHEREFORE, Reis respectfully requests that the Court enter judgment in its favor and award the following relief against Defendant:

    a. That the Court award compensatory damages of at least $912,718, plus interest and costs;

    b. That the Court award Reis its attorney's fees and expenses; and

    c. That the Court award Reis such other and further relief as is just and proper under the circumstances.

Dated:   New York, New York
          February 26, 2015

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

By: _____
      Peter L. Simmons
      Michael A. Kleinman
      Naz E. Wehrli

One New York Plaza
New York, New York 10004-1980
(212) 859-8000
peter.simmons@friedfrank.com
michael.kleinman@friedfrank.com
naz.wehrli@friedfrank.com

*Attorneys for Plaintiffs*
*Reis, Inc. and Reis Services, LLC*

9753947